Ralph E. PURVIS, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 4310.

United States District Court,
W. D. Washington,
at Tacoma.

April 14, 1972.

Ralph E. Purvis, pro se.

Stanley G. Pitkin, Seattle, Wash., Charles W. Billinghurst, Asst. U. S. Atty., Tacoma, Wash., Darrell D. Hallett, Atty., Tax Div., Washington, D. C., for defendant.

## MEMORANDUM DECISION

WILLIAM N. GOODWIN, Chief Judge.

The plaintiff makes a Fifth Amendment claim for a tax refund.

Although the facts are not in dispute, they should be briefly summarized.

Plaintiff is a lawyer who practiced his profession in the State of Washington until 1961 when he retired. Apparently he was financially successful and accumulated United States dollars. These dollars "flowed" into Canada and were invested by the plaintiff with the assistance of a Canadian brokerage firm in Canadian stocks.

The record discloses that these dollars were not idle and plaintiff bought and sold Canadian stocks from time to time up to and including the critical date.

The President of the United States, John F. Kennedy, publicized his announcement that the outflow of United States dollars into foreign countries because of American investors' purchases of foreign securities was causing a financial crisis in the United States, and the President advised the investing public that he was requesting the Congress of the United States to pass legislation that would alleviate this financial crisis. The President also declared that he would ask Congress to incorporate in the legislative enactment a provision that would provide for retroactivity of this

enactment. The President's request to Congress involved taxing the trading in foreign securities by American investors. It was aimed at curtailing the outflow of American dollars into foreign exchanges because of a claimed favorable climate for purchases by American investors of foreign securities.

Congress responded to the President's request by passing what is titled an interest equalization tax and made the tax retroactive to the date of the President's message.

The President's message was well publicized in the financial journals and the exhibits in this cause show that the plaintiff had knowledge of the President's request because of the wide publicity it generated.

Plaintiff continued to trade in Canadian securities with the dollars that he had invested prior to the President's announcement. Subsequently, he made a tax return and paid taxes imposed by the defendant, United States, pursuant to the congressional enactment.

Plaintiff makes two contentions in support of his claim for refund. He alleges that he was deprived of his property without due process because the congressional enactment imposed a retroactive tax and the enactment is therefore unconstitutional, and in support of this contention cites United States Supreme Court cases that dealt with gift and inheritance taxes. He concedes that the Supreme Court of the United States has approved legislation that provided for retroactivity in the income tax field, and he relies on his claim that the Supreme Court of the United States would decline to approve legislation that authorized retroactivity unless said legislation dealt with income tax.

Plaintiff also contends that his American dollars had flowed into Canada prior to the retroactive date, and therefore he should escape tax liability because his activities were outside the object of the legislative enactment, i. e., preventing the outflow of American dollars during the critical period.

Plaintiff presented the last contention to the Congress of the United States, and although he was successful in getting Senate approval of his request to exempt his activities in trading the dollars that had been transferred into Canada from the United States prior to the President's announcement, and thereafter used in trading in Canadian securities during the retroactive period, the House of Representatives refused to concur in the Senate amendment.

The record shows that the Secretary of the Treasury in his advice to the President and in his testimony before Congress in support of the legislative enactment also hoped that the enactment would effectively cause a change in the direction of the flow and that American dollars would drift back into the United States.

The leading case relied on by the Government in opposition to plaintiff's claim is First National Bank in Dallas v. United States, 420 F.2d 725, 190 Ct.Cl. 400 (1970). Although this case did not directly deal with the constitutionality of the legislative enactment, this Court believes that the import of that opinion sustains the Government's view that the court would have held the enactment constitutional had the claim been timely raised.

■■ It is fundamental that a congressional enactment is presumed to be constitutional unless there is some overriding reason for a contrary determination by the Court. This Court fails to find adequate support for plaintiff's Fifth Amendment claim in the case law but believes that the Supreme Court of the United States would hold to the contrary and extend the doctrine of retroactivity in income tax cases to the facts in the instant case.

■ The Court further concludes that plaintiff's contention that his trading activities should be exempted because his dollars were in Canada prior to the President's announcement does not warrant a decision of this Court that would ingraft an exception to the general rule

when the matter has been previously presented to the Congress of the United States and rejected. The Court therefore concludes that judgment should be granted to the defendant.